**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

EDWIN GIOVANNI YASELGA GONZALEZ,

      Petitioner,

v.                                                                    No. 1:26-cv-00777-DHU-LF

GEORGE DEDOS, Warden of Cibola County
Correctional Center; MARY DE ANDA-YBARRA,
Field Office Director of El Paso Field Office; TODD
LYONS, Acting Director of ICE; KRISTI NOEM,
Secretary, U.S. Department of Homeland Security;
PAMELA BONDI, U.S. Attorney General,

      Respondents.

**ORDER GRANTING PETITIONER'S EMERGENCY MOTION**
**FOR A TEMPORARY RESTRAINING ORDER**

THIS MATTER is before the Court on Petitioner's Emergency Motion for a Temporary

Restraining Order ("TRO"). Doc. 2. For the reasons set forth below, Petitioner's request for a

temporary restraining order is **GRANTED**.

**I.**
**PROCEDURAL BACKGROUND**

On January 7, 2026, Petitioner was detained by immigration officials outside his home in

Minnesota. Doc. 1 at ¶ 5. He was eventually transferred to the Cibola County Correctional Center

in Milan, New Mexico, where he remains in custody. *Id.* at ¶ 7.

On March 16, 2026, Petitioner filed a Petition for Writ of Habeas Corpus ("Petition") with

this Court. In the Petition, Petitioner seeks immediate release from immigration custody, *id.* at 22,

alleging that his arrest and re-detention violate the Immigration and Nationality Act ("INA"), the

1

Due Process Clause of the Fifth Amendment, the Fourth Amendment, and the Administrative Procedure Act ("APA"), *id.* at ¶¶ 60-96.

Petitioner filed a Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction the same day as he filed his habeas petition, which asks this Court to order Petitioner's immediate release and prohibit re-detention absent notice and a hearing. Doc. 2 at 29. In the alternative, the motion asks for a bond hearing within seven days. *Id.* Petitioner also requests an order enjoining his transfer outside the District of New Mexico during the pendency of this case. *Id.*

Respondents were served with the Petition on March 17, 2026, Doc. 3, and the next day, this Court ordered the Government to show cause why the Petition should not be granted within ten business days of service, Doc. 4. On March 19, 2026, the Court ordered Respondents to file a Response to the Motion for TRO, should they wish to do so, on or before Tuesday, March 24, 2026. No such Response was filed.

## II.
## FACTUAL FINDINGS

Petitioner supported his Motion for TRO with the facts and exhibits provided in his Petition. *See* Docs. 1, 2. Despite being given an opportunity to do so, Respondents did not provide any information to dispute the factual allegations contained in the Petition and Motion. Accordingly, at this stage of the litigation, based on the facts provided in Petitioner's Petition and Motion for TRO, the Court makes the following initial findings of fact concerning Petitioner's detention:

2

1. Petitioner Edwin Giovanni Yaselga Gonzalez is a citizen of Ecuador. Doc. 1-2 at ¶ 1. He entered the United States on February 6, 2024, after fleeing religious persecution in Ecuador. *Id.* at ¶¶ 2-3.

2. Upon entering the United States, Petitioner turned himself in to immigration officials and was briefly detained. *Id.* at ¶ 3. He was released on his own recognizance on February 8, 2024. *Id.* at ¶ 4.

3. Petitioner relocated to Minnesota to reunited with family and friends and has lived continuously in Minnesota ever since. *Id.* at ¶ 7. He has housing and employment in Minnesota. *Id.* at ¶¶ 9, 11.

4. During Petitioner's time in the United States, he has been issued a social security card, a REAL ID, and an employment authorization document, which is valid until 2030. *Id.* at ¶ 10. He also applied for asylum. *Id.* at ¶¶ 5-6.

5. Petitioner is an active member of the Mormon community in Minneapolis. *Id.* at ¶ 13.

6. In the early morning of January 7, 2026, Petitioner was arrested outside his home by ICE agents as he was starting his car. *Id.* at ¶ 14. He was taken into detention and has been imprisoned since that date. *Id.* at ¶ 15.

7. Aside from two minor traffic violations, Petitioner has no criminal history in the United States and has no previous encounters with law enforcement. *Id.* at ¶¶ 16-17.

### III.
### LEGAL STANDARD

A temporary restraining order "preserve[s] the status quo [ante]" before a final decision on the merits. *Resolution Trust Corp v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992). The status quo ante is "the last peaceable uncontested status existing between the parties before the dispute

3

developed." *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 798 n.3 (10th Cir. 2019) (citation omitted).

To obtain a temporary restraining order, a petitioner "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief," and that the balance of equities and public interest weigh in his favor. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A petitioner seeking a temporary restraining order must demonstrate that "*all four* of the equitable factors weigh in his favor." *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013). "The likelihood-of-success and irreparable-harm factors are 'the most critical.'" *People's Trust Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F.Supp.3d 1129, 1139 (10th Cir. 2018) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Regarding the irreparable harm factor, "[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1263 (10th Cir. 2016) (quotation marks and citations omitted). The balance-of-equities and public-interest factors "merge" where, like here, the Government is the opposing party. *Nken*, 556 U.S. at 435.

## IV.
## DISCUSSION

### A.  Petitioner is Likely to Succeed on the Merits.

1.  <u>Due Process Claim</u>

Petitioner argues that the Due Process Clause of the Fifth Amendment bars Respondents from re-detaining him without first providing him with a pre-deprivation hearing. Doc. 2 at 5. Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary

4

to ensure any deprivation of that protected interest accords with the Constitution. *See Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

a.    <u>Petitioner Possesses a Protected Liberty Interest.</u>

This Court first finds that there is a substantial likelihood that Petitioner will be able to show that he has a protected liberty interest in his release from immigration custody. Courts have resolved the issue of whether a conditional release rises to the level of a protected liberty interest by comparing the release in the case to the liberty interest in parole in *Morrissey v. Brewer*, 408 U.S. 471 (1972). *See Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010). Like the parole discussed in *Morrissey*, Petitioner's release from immigration custody enabled him "to do a wide range of things," including to work, worship, and "form the other enduring attachments of normal life." 408 U.S. at 482. Indeed, Petitioner was released from immigration custody two years ago and has lived alongside family and friends, Doc. 1 at ¶¶ 47-48, lawfully worked to support himself, *id.* at ¶ 50, and developed connections to his religious community, *id.* at ¶ 51.

This Court, and at least one other in this District, has found that noncitizens acquire a liberty interest once released from immigration detention. *See Garcia Domingo v. Castro*, --F.Supp.3d--, 2025 WL 2941217, at *3 (D.N.M. 2025) (Urias, J.) (at TRO stage, finding petitioner released by ORR demonstrated a substantial likelihood of success on claim that he possesses a protected liberty interest in release from detention); *Cuya-Priale v. Castro*, 2025 WL 3564145, at * 2 (D.N.M. Dec. 12, 2025) (Gonzales, J.) (finding the same at the TRO stage for a petitioner released from detention to seek asylum). The Court cannot identify any factual distinctions in this case that warrant a different conclusion with respect to this Petitioner's liberty interest, nor have Respondents supplied any.

5

b. <u>A Pre-Deprivation Hearing Was Required Before Petitioner Was Re-Detained.</u>

Having found that there is a substantial likelihood that Petitioner will be able to show a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected interest accords with the Constitution. To make this determination, the Court considers the three factors outlined in *Mathews v. Eldridge*: 1) "the private interest that will be affected by the official action," 2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Turning to the first *Mathews* factor, the Court finds there is a substantial likelihood that Petitioner can show that he has a significant private interest in remaining free from detention after being released from immigration custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). As mentioned previously, Petitioner was out of immigration custody for about two years before being re-detained by ICE, during which time his interest in release certainly grew stronger as he worked and "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. His private interest in freedom from detention is therefore substantial. *See* Doc. 2 at 13-14.

With respect to the second *Mathews* factor, the Court finds that there is a substantial likelihood that Petitioner can show that the risk of erroneous deprivation in this case is considerable, particularly here where ICE previously released Petitioner and has not shown a change in circumstances or otherwise explained why re-detention is necessary. *See id.* at 16-17. A

pre-deprivation hearing would likely attenuate this risk, but Respondents provided no such hearing to Petitioner before re-detaining him. *Id.*

Finally, the Court finds a substantial likelihood that Petitioner can show that the third *Mathews* factor favors him as well. Respondents' interest in placing Petitioner in detention absent some reason for doing so is low. And requiring a pre-deprivation hearing does not undermine the Government's interest in enforcing immigration laws; it merely ensures its enforcement tactics comport with due process. Moreover, the effort and cost of providing Petitioner this simple procedural safeguard is minimal.

On balance, the Court finds that there is a substantial likelihood that Petitioner, under the three *Mathews* factors, can show that he was entitled to a pre-deprivation hearing prior to being re-detained. Having found that there is a substantial likelihood that Petitioner can show a protected liberty interest and that due process requires a pre-deprivation hearing, the Court finds that Petitioner has established a substantial likelihood of success on the merits of his due process claim.

2.   Violation of the INA

Petitioner also argues that Respondents violated the INA by detaining him under 8 U.S.C. § 1225 without the possibility of a bond hearing. Doc. 2 at 18. He asserts he is not subject to mandatory detention and instead should be classified under § 1226(a) and entitled to a bond hearing. *Id.* at 21.

This Court finds Petitioner has established a substantial likelihood of success on the merits of this claim as well. At the time that Petitioner was re-detained, he was not near the border or seeking admission to the United States. He was outside his home in Minnesota. Doc. 1 at ¶ 55. Petitioner had also not just arrived, or even recently arrived, to the United States. He had been in the United States for almost two years, after being released from immigration custody on his own

recognizance after he first entered the country. *Id.* at ¶ 47. In line with previous decisions of this Court, Petitioner's proper classification is likely under the discretionary detention provisions of § 1226. *See Requejo Roman v. Castro*, --F.Supp.3d--, 2026 WL 125681 (D.N.M. 2026); *Salazar v. Dedos*, --F.Supp.3d--, 2025 WL 2676729 (D.N.M. 2025).

The Court finds it unnecessary at this stage to reach the merits of Petitioner's APA claim.

**B.  Petitioner Will Face Irreparable Harm Without Injunctive Relief.**

The Court next finds that Petitioner has demonstrated that his detention has caused and will continue to cause irreparable harm. It is well-established that "the infringement of a constitutional right" is enough to show irreparable harm. *Free the Nipple-Fort Collins*, 916 F.3d at 805. Having found a substantial likelihood of success on the merits of Petitioner's due process claim, "no further showing of irreparable injury" is necessary. *Id.*

**C.  The Balance of Equities and Public Interest Weigh in Petitioner's Favor.**

When the Government is the party opposing the temporary restraining order, the balance of equities and public interest merge. *Nken*, 556 U.S. at 435. The Court finds that the balance of equities and public interest weigh in Petitioner's favor. Any burden on Respondents to release Petitioner from custody and provide a pre-deprivation hearing is minimal compared to the harm that Petitioner faces due to his continued detention. It is also not in the public's interest to allow unexplained and/or unlawful detention.

## V.
### CONCLUSION

In conclusion, the Court finds that the requirements for issuing a temporary restraining order are met. The Court also finds that the status quo ante is the position that Petitioner was in prior to his re-detention by ICE. Accordingly, **IT IS ORDERED** that:

1. Petitioner's request for a temporary restraining order is **GRANTED**;

2. Respondents are **ORDERED** to release Petitioner within twenty-four hours of this Order;

3. Respondents are **RESTRAINED** from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation hearing before a neutral arbiter, that Petitioner is a danger to his community or a flight risk; and

4. This order, for good cause shown, shall remain in effect until resolution of the merits of the habeas petition. *See* FED. R. CIV. P. 65(b)(2).

**IT IS SO ORDERED.**

_____

**HONORABLE DAVID HERRERA URIAS**
**UNITED STATES DISTRICT JUDGE**

9